IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ASHLEY ELIZABETH MEKIC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, ACTING )<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil Action No. 18-1365 |

O R D E R

AND NOW, this 27th day of September, 2019, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12) filed in the above-captioned matter on March 1, 2019,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 9) filed in the above-captioned matter on January 30, 2019,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.    Background**

Plaintiff Ashley Elizabeth Mekic protectively filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, and for

Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f, effective December 17, 2014, claiming that she became disabled on November 15, 2013, due to her bipolar condition and depression. (R. 37, 218-221, 222-30, 259). After being denied initially on May 12, 2015, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on April 27, 2017. (R. 53-89, 109-12, 113-16, 120-21). In a decision dated October 4, 2017, the ALJ denied Plaintiff's request for benefits. (R. 37-48). The Appeals Council declined to review the ALJ's decision on August 21, 2018. (R. 1-4). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'"

Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have

a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

### III. The ALJ's Decision

In his October 4, 2017 decision, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2015. (R. 39). The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since

the alleged onset date of November 15, 2013. (R. 39-40). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had several severe impairments, specifically post-traumatic stress disorder ("PTSD"), major depressive disorder, generalized anxiety disorder, and substance use disorder. (R. 40). The ALJ found that Plaintiff's alleged limitations of intellectual disability and Vitamin D deficiency did not qualify as severe impairments. (Id.). The ALJ concluded that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. In so finding, he did not directly address Listing 12.05 for intellectual disorder. (R. 40-42).

The ALJ found that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> She is limited to performing routine and repetitive tasks at SVP 1 or 2 level. She must work in a static, low stress environment that involves only simple decisions and infrequent change. Changes that did occur would be explained and/or demonstrated and could be learned in 30 days or less. The work must not be fast paced and not have strict production or time quotas with only frequent public interaction.

(R. 42-46). The ALJ found that Plaintiff had no past relevant work; therefore, he moved on to Step Five. (R. 46).

At Step Five, the ALJ used a vocational expert ("VE") to determine whether or not there were a significant number of jobs in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, including the representative occupations of laundry worker, sorter, and marker. (R.46-47, 84). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 47-48).

## IV. Legal Analysis

Plaintiff raises a number of arguments as to why she believes the ALJ erred in finding that she was not disabled. The Court will not reach all of these issues, but does find that the ALJ erred in not adequately considering Plaintiff's intellectual disability at Step Three of the sequential process. Accordingly, the Court cannot find the ALJ's decision to be supported by substantial evidence and finds that remand is necessary for further consideration and discussion of this, and other issues.

On March 7, 2017, Psychologist Lindsey A. Groves, upon cognitive evaluation, assessed Plaintiff with a Full Scale IQ score of 67, a Verbal Comprehension score of 81, and a Perceptual Reasoning score of 63. (R. 473). Plaintiff asserts that, given her Full Scale score of 70 or lower, along with the fact that she was in special education at school, the ALJ should have at least considered whether her intellectual disability met or equaled the listing for intellectual disorder at Section 12.05 of the regulations. See 20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 12.05. The Court agrees.

Listing 12.05 was revised significantly effective January 17, 2017. See Revised Medical Criteria for Evaluating Mental Disorders, 81 F.R. 66138-01, 2016 WL 5341732 (Sept. 26, 2016). The new revision was therefore in effect at the time of the ALJ's decision. The revised version of Listing 12.05 provides:

> **12.05 Intellectual disorder (see [12.00B4](12.00B4)), satisfied by A or B:**
>
> A. Satisfied by 1, 2, and 3 (see [12.00H](12.00H)):
>
> 1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3 (see 12.00H):

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (see 12.00E3); or

    d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

Plaintiff's Full Scale IQ score of 67 would establish the first criterion of 12.05B pursuant to subsection B.1.a. IQ scores are generally presumed to be valid, see 12.00H.2.d, although the Court notes that an ALJ is not required to accept a claimant's

IQ scores and may reject scores that are inconsistent with the record. See Markle v. Barnhart, 324 F.3d 182, 186 (3d Cir. 2003). However, that does not appear to be the case here. The ALJ acknowledged the intellectual testing performed by Lindsey Groves (R. 44-45), and, although he did express some doubt over the testing, he did not formally reject the scores. Moreover, the fact that Plaintiff appears to have received special education services in school (R. 276) is at least relevant in determining whether she can meet the third criterion – that the disorder began prior to her turning 22. See 12.00H.4.b.

Of course, as Defendant points out, there is a remaining criterion, *i.e.*, that Plaintiff demonstrate significant deficits in adaptive functioning. While Defendant argues that, in any event, Plaintiff cannot establish that she satisfies this requirement under Listing 12.05B, the Court notes that there is evidence enough in the record to at least justify a full evaluation of whether she can or cannot. Since the record is at least ambiguous as to whether Plaintiff can establish that she has the required deficits in adaptive functioning, the Court leaves the initial analysis of this issue to the ALJ. See Fargnoli, 247 F.3d at 44 n.7 (noting that "'[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based'" (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943))).

As such, the record contains sufficient evidence to at least warrant a discussion regarding Listing 12.05. The Court notes that Plaintiff's attorney did, in fact, propose that 12.05 was a potentially relevant listing in his pre-hearing memorandum to the ALJ.[1] (R. 323). Accordingly, although the Court takes no position as to whether Plaintiff should ultimately be found to have

---

[1] Although, to be fair, counsel also suggested that the appropriate exertional level in this case was less than sedentary, which has absolutely no support in the record.

met Listing 12.05, remand is required for the ALJ to consider the matter in the first place.[2] While the Court is conscious of the fact that the evidence of intellectual testing appeared late in the process, and from a medical practitioner who provides disability opinions for many of this attorney's clients, it still must be fully considered.

Although the Court does not reach the other issues raised by Plaintiff, it does note some unfortunate gaps in the record, including some relevant to the Step Three determination. The transcript references special education records that were supposed to be forwarded separately by Mount Pleasant Area School District (R. 276), but these documents do not appear to ever have been received. Likewise, as the ALJ noted, Lindsey Groves referenced performing a clinical interview of Plaintiff, but there appears to be no record of this interview in the evidence. (R. 476, 479). Moreover, there is a notable lack of opinion evidence outside of that provided by Dr. Groves. Indeed, there is not even a useful state reviewing agent opinion, in significant part because Plaintiff refused to fully participate in the process (R. 97, 104).[3] In addition to allowing

---

[2] In the course of determining the impact of Plaintiff's intellectual testing at Step Three, the ALJ should also reconsider whether this testing supports a finding that Plaintiff's intellectual disability constitutes a severe impairment at Step Two. The Court does note, though, that since the Step Two determination as to whether a claimant is suffering from a severe impairment is a threshold analysis requiring the showing of only one severe impairment, and since Plaintiff's claim was not denied at Step Two, it does not really matter whether the ALJ correctly or incorrectly found that Plaintiff's intellectual disability was not a severe impairment. See Bradley v. Barnhart, 175 Fed. Appx. 87, 90 (7th Cir. 2006); Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007); Lee v. Astrue, Civ. No. 06-5167, 2007 WL 1101281, at *3 n.5 (E.D. Pa. Apr. 12, 2007); Lyons v. Barnhart, Civ. No. 05-104, 2006 WL 1073076, at *3 (W.D. Pa. March 27, 2006). What really matters is that the ALJ account for whatever functional limitations the condition causes. See SSR 96-8p, 1996 WL 374184 (S.S.A.), at *5 (July 2, 1996); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Regardless, the issue should be properly resolved on remand.

[3] Indeed, the lack of medical opinions put the ALJ in a difficult situation in determining Plaintiff's RFC. While the Court is not saying that additional opinions are necessarily needed, it does note that, given the current lack of opinion evidence, the ALJ should be thorough and specific as to the basis for his specific findings regarding Plaintiff's functional limitations.

for a full consideration of Listing 12.05, remand will give the parties the opportunity to shore up the record as necessary.

**V.     Conclusion**

In short, the record does not permit the Court to determine whether the findings of the ALJ at Step Three of the sequential analysis are supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands the case to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch<br>
United States District Judge

ecf:        Counsel of record